UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STURGEON-GARCIA**, <br> Plaintiff, <br> v. <br> **JOSEPH MICHAEL CAGNO**, <br> Defendant. | Case No. 16-cv-00526-YGR <br><br> **ORDER AFFIRMING BANKRUPTCY COURT** <br> Re: Dkt. No. 10 |

Appellant David Sturgeon-Garcia appeals a bankruptcy court decision finding that (1) a stipulated state court judgment entered against Debtor-Appellee, Joseph Cagno, was not a debt for money obtained by "false pretenses, a false representation, or actual fraud" under section 523(a)(2)(A),[1] even though it encompassed a count for fraudulent inducement and (2) discovery sanctions orders entered against Cagno in the state court were not the result of "willful and malicious" conduct under section 523(a)(6). Having carefully considered the papers submitted and the record in this case, the Court **AFFIRMS** the judgment of the bankruptcy court.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

**A. The Stipulated Judgment**

This case centers on Appellant's efforts to collect on a stipulated judgment in the amount of $297,897.50 entered by the Superior Court of Santa Clara County in February 2011 in favor of Stanley R. Carnekie against Debtor-Appellee Joseph Cagno. (Dkt. No. 11-2.) In that case,

---

[1] Appellant mistakenly refers to this as section 523(a)(2)(4). (Dkt. No. 10 at 8.)

1  Appellant represented Carnekie who subsequently assigned the judgment to Appellant in May

2  2013. (Dkt. No. 11-6.) In the state proceedings, the entirety of the stipulated judgment provided:

> Joseph Cagno ("Cagno,") defendant in the above-entitled action, hereby stipulates to entry of judgment against him and in favor of plaintiff Stanley R. Carnekie on all counts in the Complaint in the total amount of $297,897.50, together with post judgment interest thereon as provided by law.

(Dkt. No. 11-2.) Cagno and the superior court judge signed the document. (*Id*.) Thus, judgment was entered against Cagno on all four counts alleged in the complaint: breach of contract, breach of the duty of good faith and fair dealing, money lent, and fraudulent inducement.[2] (*Id*.; Dkt. No. 11-1.) However, when the superior court went on the record to enter the judgment, it asked counsel for both parties, including Appellant, to confirm that the basis for the monetary award did not include any claim of fraud. (Dkt. No. 11-3 at 3.) Counsel for both parties agreed. Thus:

> THE COURT:  Okay. It's my understanding that this matter is going to be resolved by way of a stipulated judgment. And that stipulated judgment reflects that, although it is a stipulated judgment as to all counts in the complaint, the plaintiff acknowledges that the damages reflected in the stipulated judgment do not relate to any claim of fraud. And certainly the issue of any punitive damages is going to be resolved by virtue of the stipulated judgment. Have I got that correct?
>
> MR. STURGEON-GARCIA:  Yes, Your Honor.
>
> MR. HERNS:  Yes, Your Honor.

(*Id.*) In particular, Mr. Herns, counsel for Cagno then represented: "[T]here's no secret that this matter is going to find its way into the bankruptcy court. That's why it's important we have a clear record and a complete record. . . . As we discussed in chambers this morning, Mr. Cagno disavows any fraudulent conduct in this case . . . I appreciate Your Honor's remarks which I expect a bankruptcy judge to read in a transcript a year or two from now in the inevitable adversary proceeding matter." (*Id*. at 3-4.) Appellant, in his role as counsel for Carnekie, did not

---

[2] The Court was unable to discern whether the stipulated judgment was entered on the day that the superior court case was set for trial, or if it was entered earlier.

dispute any of this, but simply stated that they had the stipulated judgment ready for Cagno to sign so that the Court could also sign and enter it. (*Id*. at 4.)

Later, after being assigned the judgment in 2013, Appellant alleged that the stipulated judgment was nondischargeable in bankruptcy, pursuant to section 523(a)(2)(A), as a debt arising out of fraud. (Dkt. No. 11-10.) The bankruptcy court disagreed. After a four-day trial on the merits of the claim, the bankruptcy court found that when the "Superior Court entered the stipulated judgment, the colloquy among the court and counsel was sufficient to establish that the fraud elements of Carnekie's claims against Cagno were excluded . . . and thus left property subject to adjudication by this court in Cagno's subsequent bankruptcy." (Dkt. No. 1-3 at 2.) The bankruptcy court then found that Cagno had not intended to deceive Carnekie and that Carnekie did not "justifiably rely upon any untruths stated to him or facts withheld from him by Cagno." (*Id*. at 3-4.) The bankruptcy court held that Cagno's debt on the stipulated judgment did not qualify as a nondischargeable debt under section 523(a)(2)(A). (*Id*.) Accordingly, the bankruptcy court discharged the debt. (*Id*. at 5.)

### B. Discovery Sanctions Orders

During the pendency of the superior court case, that court sanctioned Cagno $5,750 for discovery violations. Appellant argues that the bankruptcy court should have found these discovery sanctions were nondischargeable as "willful and malicious injur[ies]" under section 523(a)(6). Appellant asserts that the bankruptcy court discharged the orders "on the basis that no evidence was presented [at trial] with respect to the dischargeability of the sanctions." (Dkt. No. 10 at 51.) However, Appellant does not cite to a specific place in the record where the bankruptcy court either made this ruling or was presented with evidence to the contrary. Although not required to do so, the Court endeavored to ascertain for itself the relevant information.

After reviewing the record, it appears that the bankruptcy court did find that there was "no evidence presented" with regard to "the willful and malicious element" pertaining to the discovery sanctions. (Dkt. No. 11-14 at 77.) From the record, it appears that the main evidence presented at trial were the sanction orders themselves (Dkt. No. 11-4), the declarations of Cagno's prior counsel filed in conjunction with the superior court hearings that led to the sanctions (Dkt. No. 11-

3

1    5), and Cagno's testimony confirming what his prior lawyer stated in the declarations regarding

2    his failure to comply with discovery orders (Dkt. No. 8-4 at 105). (*See* Dkt. No. 8-4 at 104-111.)

3    Cagno also testified that, at the time that he was served with discovery in the superior court, his

4    lawyer from a previous matter had all of the documentation, and he himself had moved without

5    retaining any of the documentation. (*Id*. at 212-13.) Finally, Cagno testified that he did not intend

6    to do something malicious or harmful to Carnekie by not cooperating with the discovery orders.

7    (*Id*. at 214.)

## II. JURISDICTION

Under 28 U.S.C. § 158(a)(1), the Court has jurisdiction to hear appeals from final judgments of the United States Bankruptcy Court for the Northern District of California. The Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783 (9th Cir. 2007).

## III. DISCUSSION

As an overview, Appellant's central argument is that issue preclusion should have barred Cagno from raising in the bankruptcy court the issue of whether the stipulated judgment was a debt for money obtained by fraud.[3] However, Appellant also throws the proverbial "kitchen sink" of arguments into the brief, raising myriad other issues, some of which did not relate to issue preclusion. More specifically, Appellant also argues that the bankruptcy court (1) should have given him leave to amend his complaint to add an additional claim for nondischargeability based on fraud while acting in a fiduciary capacity under section 523(a)(4); (2) failed to consider fraud by concealment; (3) erred in excluding Cagno's deposition testimony and "admissions" during the

---

[3] The Court has construed Appellant's central argument in the light most favorable to him, as Appellant actually raises an entire series of arguments, including issue preclusion, which confuse related legal doctrines in an effort to suggest that the bankruptcy court impermissibly modified or overturned the stipulated judgment. The Court addresses these related arguments, such as application of the *Rooker-Feldman* doctrine and the enforceability of settlement agreements under California Civil Procedure Code section 664.6, herein.

4

bankruptcy trial; and (4) should have found that the discovery sanctions orders stemmed from "willful and malicious" conduct. The Court addresses each in turn.

### A. Issue Preclusion

#### 1. Standard of Review

A decision regarding issue preclusion is a mixed question of law and fact that is reviewed *de novo*. *Littlejohn v. United States*, 321 F.3d 915, 919 (9th Cir. 2003).

#### 2. Analysis

Appellant contends that the bankruptcy court erred in determining that the stipulated judgment was not a debt for money obtained by false representations under section 523(a)(2)(A) even though the judgment included a count for fraudulent inducement. Pursuant to section 523(a)(2)(A), a debt for money "obtained by false pretenses, a false representation, or actual fraud" is nondischargeable in bankruptcy.

Appellant argues that the bankruptcy court should have given issue preclusive effect to the stipulated judgment and thereby "fully recognize the Judgment as entered." (Dkt. No. 10 at 14.) In essence, Appellant argues that, because the stipulated judgment referenced "all counts in the Complaint" and the complaint included a count for fraudulent inducement, Cagno should not be allowed to litigate the substantive merits of the fraud claim in the bankruptcy court. In this regard, Appellant also contends that the bankruptcy court should not have considered the colloquy in the superior court. *Id.* at 14-18.

The doctrine of issue preclusion applies to proceedings where one seeks an exception from discharge under section 523(a). *In re Baldwin*, 249 F.3d 912, 917 (9th Cir. 2001) (citing *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991)). However, since bankruptcy courts have exclusive jurisdiction to determine debt dischargeability, the doctrine should be applied cautiously. *In re Berr*, 172 B.R. 299, 312 (B.A.P. 9th Cir. 1994) (citations omitted); *see also Archer v. Warner*, 538 U.S. 314, 320-21 (2003) (reaffirming that issue preclusion does not prevent the bankruptcy court "from looking beyond the record of the state-court proceeding . . . in order to decide whether the debt at issue . . . was a debt for money obtained by fraud" because "Congress intended to allow the relevant determination . . . to take place in bankruptcy court, not to force it to occur earlier in state

5

court at a time when nondischargeability concerns are not directly in issue and neither party has a full incentive to litigate them" (internal quotation marks and citation omitted)).

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, "the preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued." *In re Baldwin*, 249 F.3d at 917 (citations omitted). For a court to give issue preclusive effect to a judgment under California law, a five-part test must be satisfied: (1) the issue must be identical to the issue litigated in the prior proceeding; (2) the issue must have been actually litigated; (3) the issue must have been necessarily decided in the prior proceeding; (4) the decision in the prior proceeding must be final and on the merits; and (5) the party against whom preclusion will be applied must be the same as, or in privity with, the original party. *Ki O. Son v. Heung Ser Park*, No. C 10-00085 MHP, 2010 WL 4807089, at *5 (N.D. Cal. Nov. 19, 2010) (citing *Cal–Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1123 (9th Cir. 2003)). The party asserting issue preclusion has the burden of proving these requirements have been met, and "reasonable doubts about what was decided in the prior action should be resolved against the party seeking to assert preclusion." *In re Honkanen*, 446 B.R. 373, 382 (B.A.P. 9th Cir. 2011) (citation omitted). Finally, a court may view the record of the previous action as a whole to determine what issues were actually litigated and necessarily decided. *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 809-10 (2010) (citations omitted).

Applying this test, stipulated judgments in California are generally not given issue preclusive effect unless the record or the judgment shows an intent by the parties that the judgment to be given such effect. *See Ki O. Son v. Heung Ser Park*, 2010 WL 4807089, at *5 (citing *In re Berr*, 172 B.R. at 299; *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 655 (B.A.P. 9th Cir.1998)); *see also In re Yaikian*, 508 B.R. 175, 179 (Bankr. S.D. Cal. 2014) ("Generally, stipulated judgments in California are afforded claim preclusive effect, but not issue preclusive effect."). The rule is grounded on the premise that stipulated judgments result from negotiation, rather than litigation. *In re Yaikian*, 508 B.R. at 179; *see also In re Berr*, 172 at 306 ("Ordinarily, stipulated or consent judgments do not provide a basis for collateral estoppel. The very purpose of a stipulated or consent judgment is to avoid litigation, so the requirement of actual litigation will always be

6

1  missing. However, such judgment may be given preclusive effect if that was the intent of the

2  parties. The intent of the parties can be inferred either from the judgment or the record." (citation

3  omitted)).

4  Thus, the state court's role in entering a stipulated judgment is circumscribed so that,

5  "unless the state court record reflects that it considered evidence of the wrongdoing at issue, the

6  substantive issues are neither actually nor necessary decided by the state court." *In re Yaikian*, 508

7  B.R. at 179. Consequently, "the terms of a stipulated judgment are important in a dischargeability

8  context. If the stipulation does no more than assess the amount of the judgment without any

9  indication of the facts on which the judgment is based, then there is not a sufficient record on

10  which to base [issue preclusion]." *In re Berr*, 172 B.R. at 307 (citations omitted).

11  In this case, Appellant fails to demonstrate that the parties intended for the stipulated

12  judgment to have issue preclusive effect with respect to fraud. The stipulated judgment itself

13  consists of just one sentence, stating only that the defendant "stipulates to entry of judgment

14  against him . . . on all counts in the Complaint in the total amount of $297,897.50 . . . ." (Dkt. No.

15  11-2 at 2.) Furthermore, the exchange between counsel, including Appellant, and the superior

16  court judge provides strong evidence that the parties did *not* intend for the stipulated judgment to

17  have issue preclusive effect in any future proceedings on the substantive issue of fraud. In fact, it

18  explicitly shows the opposite intent: counsel for both parties acknowledged on the record that the

19  case would end up in the bankruptcy court and agreed that, "although it is a stipulated judgment as

20  to all counts in the complaint . . . the damages reflected in the stipulated judgment do not relate to

21  any claim of fraud." (Dkt. No. 11-3 at 3.) In addition, Cagno "disavow[ed] any fraudulent conduct

22  in [the] case." (*Id.*)[4] Thus, because the stipulated judgment and superior court record did not

---

[4] Appellant's argument that the exchange between counsel and the superior court judge is not enforceable under California Civil Procedure Code section 664.6 because the parties themselves did not agree to anything on the record is irrelevant here, where the Court is not looking to enforce an agreement, but to decide whether the stipulated judgment should be given issue preclusive effect. These are distinct inquiries.

Moreover, Appellant's conduct is highly questionable. Appellant, as the attorney in the underlying superior court action, represented to the superior court that the stipulated judgment did not include damages on the fraud count, which he knew Cagno was relying upon in order to

indicate the parties' intent for the judgment to have issue preclusive effect with respect to fraud, Cagno was not barred from litigating the substantive fraud issue in the bankruptcy court. *See In re Yaikian*, 508 B.R. at 185 (finding that a stipulated state court judgment for fraud could not be given issue preclusive effect in a subsequent bankruptcy proceeding because "the Court cannot independently infer that the state court made findings of fraud that are missing from the record").

Appellant next argues that the bankruptcy court impermissibly modified or overturned the stipulated judgment in violation of the *Rooker-Feldman* doctrine. (*See* Dkt. No. 10 at 28-33.) This argument fails to persuade. As demonstrated above, the bankruptcy court did not modify or overturn the stipulated judgment. Instead, the bankruptcy court simply looked at the intent of the parties in reaching the stipulated judgment to determine if issue preclusion should prevent Cagno from relitigating the substantive fraud issue under section 523(a)(2)(A). (*See* Dkt. No. 1-3 at 2 ("This Court believes that when the Superior Court entered the stipulated judgment, the colloquy among the court and counsel was sufficient to establish that the fraud elements of Carnekie's claims against Cagno were excluded by the Superior Court . . . .").) The bankruptcy court was required to do this when applying issue preclusion under California law.

More fundamentally, Appellant's argument that the bankruptcy court lacked jurisdiction to review the stipulated superior court judgment under the *Rooker-Feldman* doctrine is inapposite. The *Rooker-Feldman* doctrine prevents federal courts—other than the Supreme Court—from "engag[ing] in what is essentially appellate review of state court determinations of federal questions or to evaluate constitutional claims 'inextricably intertwined' with a state court judgment." Cal. Prac. Guide: Bankruptcy § 1:270 (The Rutter Group 2016) (citations omitted); *see also In re Kurtz*, No. ADV 1:11-AP-01575-VK, 2013 WL 3467105, at *2 (C.D. Cal. July 10, 2013) ("The *Rooker–Feldman* doctrine prohibits federal district courts from hearing cases that constitute appeals of state court judgments.") The *Rooker-Feldman* doctrine does not require the

---

prevent a future nondischargeability action. In spite of this, Appellant now argues that his statements on the record in the superior court should not be considered when determining whether the parties intended the stipulated judgment to have issue preclusive effect with respect to fraud.

bankruptcy court "to grant preclusive effect to state court judgments that implicate core bankruptcy matters." Cal. Prac. Guide: Bankruptcy § 1:275 (The Rutter Group 2016) (citations omitted).

Under the circumstances here, the bankruptcy court has exclusive jurisdiction to determine debt dischargeability. "Actions seeking a determination of non-dischargeability are such core bankruptcy proceedings and are not subject to the *Rooker–Feldman* doctrine." *In re Kurtz*, 2013 WL 3467105, at *2 (citation omitted). Thus, even if a debt dischargeability action in bankruptcy court raises the same issues as those raised in state court, the legal challenge at issue is not the state court judgment, but rather a determination of substantive rights under the Bankruptcy Code. Accordingly, the *Rooker-Feldman* doctrine does not apply. *See id.*

**B. Leave to Amend**

**1. Standard of Review**[5]

Leave to amend a complaint is generally reviewed under the abuse of discretion standard. *In re Magno*, 216 B.R. 34, 37-38 (B.A.P. 9th Cir. 1997) (citing *In re Daisy Systems Corp.,* 97 F.3d 1171, 1175 (9th Cir. 1996)). However, "[e]ven under the abuse of discretion standard, the bankruptcy court's decision is reversible if it is based upon an incorrect legal conclusion." *Id.* (citing *In re Dominguez,* 51 F.3d 1502, 1508 n. 5 (9th Cir. 1995)). Thus, a decision as to whether an amendment relates back to the date of the original pleading under Rule 15(c) is a legal question that is reviewed *de novo. Id.* (citing *In re Dominguez,* 51 F.3d at 1509; *Martell v. Trilogy Ltd.,* 872 F.2d 322, 325 (9th Cir. 1989)).

**2. Analysis**

Appellant sought leave to add to his nondischargeability complaint an additional claim arising under section 523(a)(4), namely fraud while acting in a fiduciary capacity. (Dkt. No. 11-11.) An amended complaint will relate back if "the specified conduct of the defendant, upon which the plaintiff is relying to enforce his amended claim is identifiable with the original claim." *In re*

---

[5] The parties dispute the appropriate standard of review with respect to each of the remaining issues addressed herein. The Court notes for each the appropriate standard to apply.

9

*Englander*, 92 B.R. 425, 428 (B.A.P. 9th Cir. 1988) (quoting *In re Dean,* 11 B.R. 542, 545 (9th Cir. BAP 1981)). If "the clear subject of both complaints is the dischargeability of specific loans," then "the amended complaint is sufficiently identifiable with the original claim." *Id*. However, the purpose of notice pleading is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Magno*, 216 B.R. at 40 (B.A.P. 9th Cir. 1997) (quoting *In re Marino,* 37 F.3d at 1357 (9th Cir. 1994)). "[A] liberal amendment policy that would not require a plaintiff to plead any facts except to mention the words 'claim' and 'discharge' would eviscerate the pleading requirements." *Id*. (citing Fed. R. Bankr. P. 7008/Fed. R. Civ. P. 8(a) (stating that a pleading shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief")). Thus, the "majority of cases" construing section 523 complaints hold "that an amendment can only relate back if the new claim relies on the same facts and does not seek to insert new facts." *Id*. (citation omitted). Relation back therefore "turns on whether the fraud alleged in the [original] complaint is the same as the fraud alleged in the motion." *In re Markus*, 313 F.3d 1146, 1150 (9th Cir. 2002); *see also In re Magno*, 216 B.R. at 42 (rejecting relation back of amended section 523(a)(6) complaint when new claim did not rely on same facts as original section 727(a) complaint).

Here, Appellant argues that leave should have been granted as the amendment was prompted by Cagno's own contention that he and Carnekie were "general partners" in the real estate project through which the debt arose, giving rise to the fiduciary relationship required by section 523(a)(4). (Dkt. No. 10 at 51-52.)[6] The Court disagrees. While the subject of the amended complaint continued to be the dischargeability of the debt reflected in the stipulated judgment, the proposed amendment focused on a new theory and necessitated discovery into a new set of facts.

---

[6] The bankruptcy court denied the request and found that the claim did not relate back to the section 523(a)(2) claim because "a determination of whether someone acted as a fiduciary . . . requires a whole new set of facts and legal issues than does a section 523(a)(2) claim." (Dkt. No. 11-12 at 3.) Specifically, the bankruptcy court found that the proposed amendment focused on whether Cagno properly managed the partnership during the ensuing three years, rather than on the funds that Carnekie originally contributed to the venture, which was what had formed the basis of the stipulated judgment and the operative complaint in the bankruptcy court. (*Id.*)

10

1    Thus the nature of the fraud was distinctly different. The fact that the same parties were involved
2    is insufficient in itself. The amendment expanded the claim significantly to include the entire
3    relationship of the parties, discovery of other events, and, perhaps, even a different remedy. Under
4    these circumstances, the amendment cannot be deemed to relate back. The bankruptcy court was
5    correct to deny the motion for leave to amend.

### C. Failure to Consider Fraud by Concealment

#### 1. Standard of Review

The bankruptcy court's factual finding of justifiable reliance is a finding of fact that the Court reviews for clear error. *See In re Apte*, 96 F.3d 1319, 1324 (9th Cir. 1996) (reviewing for clear error the bankruptcy court's finding that there was no justifiable reliance in case where fraudulent nondisclosure was alleged). To the extent the Court reviews the legal elements of fraudulent concealment, such review would be *de novo*.

#### 2. Analysis

Appellant asserts that the bankruptcy court failed to consider the issue of fraudulent concealment properly. Under bankruptcy law, a debt for money obtained by fraud, if proven, is nondischargeable. In order to prove fraud under section 523(a)(2)(A), a creditor must establish: (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or reliance. *In re Parks*, 571 F. App'x 523, 525 (9th Cir. 2014), *as amended* (June 6, 2014). In the context of fraudulent concealment, "[u]nder common law, a false representation can be established by an omission when there is a duty to disclose."[7] *In re Eashai*, 87 F.3d 1082, 1089 (9th Cir. 1996) (citing Restatement (Second) of Torts § 551 (1976)). Where such "silence or omission" concerns a "material fact" it is actionable under section 523(a)(2)(A). *Id*. In other words, liability attaches when one "fails to disclose to another a

---

[7] The Court notes no discussion or briefing on the issue of duty to disclose, although a review of the record would suggest sufficient evidence exists to make such a finding.

11

fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction . . . ." *In re Apte*, 96 F.3d at 1324 (citing Restatement (Second) of Torts § 551 (1976)). For this reason, materiality—rather than reliance—becomes "the decisive element of causation" in cases involving nondisclosure of material facts. *Id*. at 1323 (quoting *Titan Group, Inc. v. Faggen,* 513 F.2d 234, 239 (2d Cir. 1975), *cert. denied*, 423 U.S. 840 (1975)).

Appellant argues that Cagno committed fraud with both affirmative misrepresentations and concealment, and that the bankruptcy court failed to consider the latter. Specifically, Appellant claims that the bankruptcy court improperly granted the discharge based on the lack of evidence showing justifiable reliance, which Appellant contends is not required when proving fraud by concealment. Relevant here are the bankruptcy court's actual findings. First, the bankruptcy court orally found no "actual intent to deceive or justifiable reliance on any misrepresentations, even if there was actual intent to deceive." (Dkt. No. 11-14 at 82.) Next, the bankruptcy court confirmed its findings of fact in its memorandum following the oral ruling: "Cagno had not intended to deceive Carnekie. Even if he had so intended, Carnekie, as a matter of fact, did not justifiably rely on any false representations by Cagno." (Dkt. No. 11-19 at 4.)

First, the Court finds that Appellant misconstrues the basis for the bankruptcy court's decision. The bankruptcy court's decision deals with both Cagno's lack of intent to deceive, and additionally, Carnekie's lack of justifiable reliance. Both are logically consistent and applicable to each of Appellant's arguments alleging fraud.

Second, while Appellant is correct that cases involving fraud by nondisclosure emphasize "materiality rather than reliance," reliance is not wholly eliminated. *See In re Apte*, 96 F.3d at 1323; Restatement (Second) of Torts §§ 551-52 (1976). Rather, it must be viewed differently, as the fraud at issue is an omission rather than an affirmative misrepresentation. Moreover, fraudulent intent must still be established as one of the five elements for a section 523(a)(2)(A) fraud claim, even when fraudulent nondisclosure is alleged. *See In re Apte*, 96 F.3d at 1322 (internal quotation marks and citation omitted). Thus, even if this Court were to find that the bankruptcy court incorrectly focused on reliance, rather than materiality, that would not change

the outcome. Here, the bankruptcy court found no intent to deceive. On that basis alone, the section 523(a)(2)(A)claim fails.

### D. Exclusion of Cagno's Deposition Testimony and "Admissions"

#### 1. Standard of Review

The Court reviews the bankruptcy court's evidentiary rulings with respect to the proffered deposition testimony and written "admissions" for abuse of discretion. *In re Barker*, No. ADV.RS 06-01033-PC, 2000 WL 35888262, at *4 (B.A.P. 9th Cir. June 2, 2009) (citation omitted).

#### 2. Analysis

The trial judge is given great latitude in the admission or exclusion of evidence. *Hollinger v. United States*, 651 F.2d 636, 640 (9th Cir. 1981).

Appellant argues that the bankruptcy court should not have excluded Cagno's deposition testimony and "admissions" merely because they were filed separately and not included on the exhibit list. Appellant fails to cite to record support for his argument until his reply brief. There, he cites to the entire November 16, 2015 transcript. (Dkt. No. 15 at 28.) Although the Court is not obligated to comb through the entire transcript to identify where in the record the evidence was excluded, the Court has nonetheless again attempted to do so here. This review revealed that the bankruptcy court made the decision not only because Appellant failed to comply with the trial order and include them on the exhibit list, but also because the witness was present to be questioned and could be impeached with any prior inconsistent statements included in the deposition testimony or "admissions." (*See*, *e.g.*, Dkt. No. 11-14 at 11.) Appellant argued that he wanted to read the deposition testimony "like a play" with the witness. (*Id*. at 8.) The bankruptcy court stated that it would be inefficient to accept both the evidence and have the witness merely repeat it back. (*See*, *e.g.*, *id*. at 9-10.)

Appellant is correct that the evidence is permissible under federal rules, but a court also has authority to manage its trials and require early identification of evidence such that the trial is conducted in an efficient manner. Further, no prejudice existed given the witness's presence. Under these circumstances, the Court cannot find that the bankruptcy court abused its discretion in refusing to admit either the deposition testimony or the "admissions."

**E. Discovery Sanctions Orders**

    **1. Standard of Review**

The bankruptcy court's determination that the discovery sanctions orders were dischargeable is a finding of fact that the Court reviews for clear error. *See In re Suarez*, 400 B.R. 732, 738 (B.A.P. 9th Cir. 2009), *aff'd*, 529 F. App'x 832 (9th Cir. 2013) (reviewing for clear error bankruptcy court's finding that debt was nondischargeable under section 523(a)(6)).

    **2. Analysis**

Appellant asserts that the state court's discovery sanctions should have qualified as "willful and malicious injury" under section 523(a)(6). Courts use a two-pronged test to determine whether a particular debt constitutes "willful and malicious injury by the debtor to another" under that section. *Id.* at 736. "The creditor must prove that the debtor's conduct in causing the injuries was both [1] willful and [2] malicious." *Id.* (citations omitted). First, willfulness requires proof that the debtor intentionally injured the creditor, and also intended the consequences of the act, not just the act itself. *Id.* at 736-37 (citations omitted). "The debtor must act with a subjective motive to inflict injury, or with a belief that injury is substantially certain to result from the conduct." *Id.* at 737 (citations omitted). Second, "[f]or conduct to be malicious, the creditor must prove that the debtor: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) was done without just cause or excuse." *Id.* (citations omitted). No *per se* rule exists that requires a finding of "willful and malicious" conduct as a matter of law within the meaning of section 523(a)(6) after a failure to comply with a court order. *See id.*

Here, even if Cagno knew that he was failing to comply with a court discovery order, this alone does not establish "willful and malicious" conduct. The record establishes that the bankruptcy court believed Cagno's testimony that he did not possess the subjective intent to injure, and that he believed he had nothing further to produce. Thus, based on what the Court could discern from the record, it cannot find that the bankruptcy court clearly erred when it found no evidence to support a finding of "willful and malicious" conduct within the meaning of section 523(a)(6) when analyzing the discovery sanctions order.

### IV. CONCLUSION

For the foregoing reasons, the bankruptcy court's order is **AFFIRMED**.

This Order terminates this appeal.

**IT IS SO ORDERED.**

Dated: March 29, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**